1

2

3

4

5

6

7

8

9

10

**United States District Court**
For the Northern District of California

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| WAYNE MERRITT MOTOR CO., INC. DBA RV'S OF MERRITT, WAYNE MERRITT, PEGGY MERRITT, | ) ) ) ) | Case No.: 11-CV-01762-LHK |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | ) ) | |
| NEW HAMPSHIRE INSURANCE COMPANY, and Does 2-100, | ) ) ) | |
| Defendants. | ) ) | |

Plaintiffs Wayne Merritt Motor Co., Inc. dba RV's of Merritt, Wayne Merritt and Peggy

Merritt ("Plaintiffs") bring this diversity action against Defendant New Hampshire Insurance

Company ("Defendant"), alleging tort and contract claims related to Defendant's refusal to fully

indemnify Plaintiffs for a judgment rendered against them in state court. Defendant moves to

dismiss for failure to state a claim, or alternatively, for a more definite statement or to strike. For

the following reasons, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion

to dismiss.

# I. BACKGROUND

Plaintiffs owned and operated a dealership specializing in recreational vehicles ("RVs") called "RV's of Merritt" in Scotts Valley, California.  SAC ¶ 6.  Plaintiffs purchased from Defendant a Garage Liability insurance policy (the "GL policy"), as well as several other insurance products.  *Id.* ¶ 7.  The GL policy required an annual premium payment of $22,136.  *Id.* ¶ 25.

The GL policy's "declarations page" "prominently" stated that the policy provided $1,000,000 in "single occurrence coverage" and $2,000,0000 in" aggregate coverage."  *Id.* ¶ 9.  The policy was accompanied by an addendum labeled "GARAGE POLICY EXTENSION ENDORSEMENT" (the "endorsement").  *Id.* ¶ 12.  On the tenth page of the endorsement, there was a provision entitled "LIMIT OF INSURANCE," which stated that coverage for each "suit" or claim for "product related damage" was limited to $25,000 (the "cap provision").  *Id.* ¶ 14.

In 2007, Plaintiffs were sued in state court over conduct related to the sale of an RV (the "state court action.").  Defendant undertook at least some aspects of Plaintiffs' defense.  In June 2007, Defendant rejected an initial settlement offer of $110,000.  *Id.* ¶¶ 20-21.  A mediation was held in October 2008.  *Id.* ¶ 20.  Defendant "refused to settle and forced litigation, which caused [Plaintiff] Wayne [Merritt] to undergo a surgery for Diverticulitis in December 2008."  *Id.* ¶ 21.  Mr. Merritt was hospitalized for five days.  *Id.* ¶ 22.  Plaintiff Peggy Merritt was "forced to handle both the litigation and her husband's hospitalization, [which] caused her needlessly extreme emotional distress."  *Id.* ¶ 22.

On September 2, 2009, the jury in the state court action returned a special verdict holding Plaintiffs liable for intentional misrepresentation, concealment, negligent misrepresentation, unlawful practice in the sale of consumer goods, breach of contract and breach of the implied covenant of good faith and fair dealing.  *See* ECF No. 27-1 (Request for Judicial Notice), Ex. A (Certified Copy of Special Verdict Form, *Agard, et al. v. Wayne Merritt Motor Co., et al.*, Santa Cruz County Superior Court Case No. CV 157820).[1]  After issuance of the verdict, the parties

---

[1]    The Court takes judicial notice of the certified copy of the special verdict form in the state court action.  *See Rosen v. St. Joseph Hosp. of Orange County*, 193 Cal. App. 4th 453, 457 (Cal. Ct. App. 2011) (certified copies of a special verdict, judgment, and minute order recording the jury's verdict are properly subject to judicial notice).

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

settled for $177,000, approximately $77,000 of which was attributable to attorney's fees (the "settlement award").  SAC ¶ 18.  Defendant indemnified Plaintiffs for the entire attorney's fees award.  *Id.* ¶ 19.  However, claiming that the cap provision limited any further liability, Defendant indemnified Plaintiffs for only $25,000 of the remaining $100,000 owed under the settlement.  In order to pay the remaining $75,000, Plaintiffs had to obtain a loan and place a deed of trust on their property.  *Id.* ¶ 24.

Subsequently, Plaintiffs filed a complaint against Defendant[2] in state court alleging causes of action for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) negligence, (4) unfair business practices, (5) intentional infliction of emotional distress, (6) interference with a protected property interest, (7) fraud, (8) reformation, and (9) violations of Cal. Ins. Code § 785.  Plaintiffs sought general, special and punitive damages, attorney's fees, reformation and injunctive relief.  Defendant removed the action on April 11, 2011 under 28 U.S.C. § 1332(a).  Plaintiffs filed a Second Amended Complaint ("SAC"), the first in federal court, on May 16, 2011.

## II. LEGAL STANDARD

Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim is "proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  *Shroyer v. New Cingular Wireless Services, Inc.*, 606 F.3d 658, 664 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint.  *Ashcroft v. Iqbal*, ⸻ U.S. ⸻, ⸻, 129 S.Ct. 1937, 1949 (2009).  While a complaint need not include detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Courts are not bound to accept as true "a legal conclusion couched as a factual allegation."  *Id.*

---

[2]     The state court complaint also named American International Group, Inc. ("AIG") as a defendant.  *See* ECF No. 1 (Notice of Removal).  The Second Amended Complaint does not include AIG.

United States District Court
For the Northern District of California

If the court concludes that the complaint should be dismissed, it must then decide whether

to grant leave to amend.  "[A] district court should grant leave to amend even if no request to

amend the pleading was made, unless it determines that the pleading could not possibly be cured

by the allegation of other facts."  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Doe*

*v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Under Fed. R. Civ. P. 12(e), "[a] party may move for a more definite statement of a

pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the

party cannot reasonably prepare a response."

### III. DISCUSSION

**1.     First Cause of Action: Breach of Contract**

In order to state a claim for breach of contract, a plaintiff must allege (1) the existence of a

valid contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the

defendant and (4) damages.  *First Commercial Mortgage Co. v. Reece*, 89 Cal. App. 4th 731, 745

(Cal. Ct. App. 2001).  Here, the dispute centers on whether Defendant breached its obligation under

the GL Policy by refusing to indemnify Plaintiffs for the entire amount of the settlement award.

SAC ¶ 42.  Based on the briefing, it appears the parties agree that Plaintiffs' breach of contract

claim turns on whether the cap provision is found to be unenforceable.

**a.     Plaintiffs have pled facts sufficient to show that the cap provision is
unenforceable**

"Unquestionably, California insurers may rely on endorsements to modify printed terms of

a form policy."  *Haynes v. Farmers Ins. Exch.*, 32 Cal.4th 1198, 1208 (Cal. 2004).  However, "an

insurer cannot escape its basic duty to insure by means of an exclusionary clause that is unclear."

*State Farm Mut. Auto. Ins. Co. v. Jacober*, 10 Cal.3d 193, 201 (Cal. 1973).  As the California

Supreme Court has explained:

> We have declared time and again any exception to the performance of the basic
> underlying obligation must be so stated as clearly to apprise the insured of its effect.
> Coverage may be limited by a valid endorsement and, if a conflict exists between
> the main body of the policy and an endorsement, the endorsement prevails.  But to
> be enforceable, any provision that takes away or limits coverage reasonably

4

United States District Court
For the Northern District of California

expected by an insured must be conspicuous, plain and clear. Thus, any such limitation must be placed and printed so that it will attract the reader's attention. Such a provision also must be stated precisely and understandably, in words that are part of the working vocabulary of the average layperson. The burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer.

*Haynes*, 32 Cal.4th at 1204 (internal citations and quotations marks omitted).

Construed in the light most favorable to the non-moving party, Plaintiffs' allegations establish a reasonable expectation that the GL Policy provided $1,000,0000 in single occurrence coverage. In determining whether coverage is consistent with the objectively reasonable expectations of an insured, "the court must interpret the language in context, with regard to its intended function in the policy … The court may also rely on common sense in determining the insured's objectively reasonable expectations." *Farmers Ins. Exch. v. Knopp*, 50 Cal. App. 4th 1415, 1422 (Cal. Ct. App. 1996).

Here, Plaintiffs allege that the declarations page for the GL Policy "prominently stated there was $1,000,000 in single occurrence coverage, and $2,000,0000 in aggregate coverage." SAC ¶ 9. The declarations' description of coverage is relevant in ascertaining an insured's reasonable expectations. *See, e.g.*, *Haynes*, 32 Cal.4th 1198 (liability limitations described in the declarations pages establish a reasonable expectation of coverage). Moreover, it is clearly rational for a person purchasing insurance to assume that a $22,136 premium payment buys more than $25,000 in coverage. The fact that the GL Policy covered a dealership selling RVs, many of which cost thousands of dollars, also suggests that Plaintiffs were reasonable to expect extensive coverage.

Because Plaintiffs reasonably expected $1,000,000 in coverage, any limiting clause must be "conspicuous, plain and clear." *Id.* As noted above, the cap provision appears in a document entitled "GARAGE LIABILITY EXTENSION ENDORSEMENT." SAC ¶ 12. Such language creates the impression that the endorsement expands coverage, rather than limiting it. In addition, although the cap provision is included in a subsection plainly labeled "LIMIT OF INSURANCE," that subsection is "buried" ten pages into the endorsement. SAC ¶ 14. Obscuring a term that reduces coverage by 97.5 percent in an endorsement rather than on the declarations page can hardly be said to conform with the insurer's "obligation … to apprise the insured" of coverage limitations.

United States District Court
For the Northern District of California

*Id.* (an endorsement limiting liability that appeared on an insurance policy's 24th page, was not clearly referenced in the policy's declarations, and was not "bolded, italicized, enlarged, underlined, in different font, capitalized, boxed, set apart, or in any other way distinguished from the rest of the fine print," was inconspicuous and therefore unenforceable); *see also Thompson v. Mercury Cas. Co.*, 84 Cal. App. 4th 90, 97 (Cal. Ct. App. 2000) (a limitation appearing in an unnumbered policy addendum instead of "in the 'Liability' section of the policy, where an average layperson would expect to find it," was unenforceable).  For purposes of a motion to dismiss, the Court finds Plaintiffs' allegations sufficient to show that the cap provision is not "conspicuous, plain and clear" and is therefore unenforceable.

  *Hadland v. NN Investors Life Ins. Co.*, 24 Cal. App. 4th 1578, 1586 (Cal. Ct. App. 1994), cited by Defendant, does not compel a different conclusion.  The *Hadland* court noted the "general rule that the receipt of a policy and its acceptance by the insured without an objection binds the insured as well as the insurer and he [or she] cannot thereafter complain that he [or she] did not read it or know its terms.  It is a duty of the insured to read his [or her] policy."  *Id.* (citing *Aetna Casualty & Surety Co. v. Richmond*, 76 Cal. App. 3d 645, 652 (Cal. Ct. App. 1977)).  However, the court went on to state that an "insured [is] bound by *clear and conspicuous provisions* in the policy even if evidence suggests that the insured did not read or understand them." *Id*. (citing *Sarchett v. Blue Shield of California*, 43 Cal.3d 1, 15 (Cal. 1987)).  Finding that the terms of the policy were clear, the *Hadland* court held that the insured was bound by them.  Because the Court does not find that the provision at issue here was sufficiently conspicuous, *Hadland* does not apply.

  **b.**  **The factual allegations provide sufficient notice of Plaintiffs' claim for relief**

  Defendant also argues that Plaintiffs have failed to state a claim for breach of contract because they do not identify "what portion of their policy was arguably breached … or whether or how there was any claim actually covered under the policy that was not paid."  ECF No. 18 (Motion to Dismiss) at 6.  To the contrary, the complaint clearly states that Defendant "breached the GL policy by failing to pay benefits owed."  SAC ¶ 42.  Plaintiffs repeatedly emphasize their understanding that the GL Policy obligated Defendant to indemnify them for up to $1,000,000 in losses, and that Defendant thus breached the contract by asserting the cap provision.  As such,

6

1   Defendant has been "put on notice of the legal theories that could hold [it] liable to … for breach of

2   contract." *Dion LLC v. Infotek Wireless, Inc.*, C 07-1431SBA, 2007 WL 3231738 (N.D. Cal. Oct.

3   30, 2007).

4           **c.      The Court declines to address Defendant's argument under California**

5                   **Insurance Code section 533 because it was raised for the first time on reply**

6           Finally, Defendant argues in its Reply Brief that even if the contract was breached, any

7   relief is precluded by Cal. Ins. Code § 533.  Section 533 provides: "An insurer is not liable for a

8   loss caused by the willful act of the insured."  Defendant contends that because the jury in the state

9   court action found Plaintiffs liable for fraud, the GL policy did not require Defendant to indemnify

10  Plaintiffs at all.

11          Since this argument was not raised in Defendant's motion to dismiss, Plaintiffs have not

12  had an opportunity to respond.  The Court therefore declines to consider whether Section 533

13  applies in this case.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court

14  need not consider arguments raised for the first time in a reply brief.").  However, if Plaintiffs

15  choose to amend their complaint, Defendant may include this argument in any subsequent motion

16  to dismiss.

17          Because Plaintiffs have sufficiently alleged facts showing that the cap provision is invalid,

18  the Court DENIES the motion to dismiss Plaintiffs' claim for breach of contract.

19  **2.      Second Cause of Action: Breach of the Covenant of Good Faith and Fair Dealing**

20          "Under California law, all insurance contracts contain an implied covenant of good faith

21  and fair dealing which requires each contracting party to refrain from doing anything to injure the

22  right of the other to receive the benefit of the agreement." *Hanson By & Through Hanson v.*

23  *Prudential Ins. Co. of Am.*, 783 F.2d 762, 766 (9th Cir. 1985).  The covenant prevents a party from

24  acting in bad faith to frustrate the contract's actual benefits.  *Guz v. Bechtel Nat. Inc.*, 24 Cal.4th

25  317, 353 n. 18 (Cal. 2000).  A claim for breach of the implied covenant of good faith and fair

26  dealing requires that: "(1) benefits due under the policy must have been withheld; and (2) the

27  reason for withholding benefits must have been unreasonable or without proper cause." *Love v.*

28  *Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (Cal. Ct. App. 1990).  The mere denial of benefits

7

1   does not demonstrate bad faith.  *See Safeco Insurance Co. of America v. Guyton*, 692 F.2d 551, 557

2   (9th Cir. 1982) (where policy dispute involved a genuine legal issue concerning liability, insurer

3   could not have been acting in bad faith by refusing to pay claim); *but see Egan v. Mut. of Omaha*

4   *Ins. Co.*, 24 Cal.3d 809, 817 (Cal. 1979) (finding bad faith where insurer denied claim without an

5   investigation); *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376 (Cal. Ct. App.

6   1970) (inaccurately characterizing an insured's illness to minimize coverage could constitute bad

7   faith); *Richardson v. Employers Liab. Assur. Corp.*, 25 Cal. App. 3d 232, 239 (Cal. Ct. App. 1972)

8   (finding bad faith on the part of an insurer that withheld payment knowing that benefits were owed,

9   forced an arbitration hearing despite having no defense and required plaintiffs to resort to litigation

10  to have the award judicially confirmed).

11          Plaintiffs allege that Defendant "made a cost benefit analysis" and denied their claim under

12  a provision it knew to be illegal under "basic California insurance law."  *See* SAC ¶¶ 36-37.

13  Essentially, Plaintiffs argue that although Defendant complied with the plain terms of the contract,

14  it did so in bad faith.  Generally, where an insurer denies coverage under an unenforceable

15  provision, the proper remedies are restitution or contract damages.  *See McBride v. Boughton*, 123

16  Cal. App. 4th 379, 388 (Cal. Ct. App. 2004) (noting that "restitution may be awarded in lieu of

17  breach of contract damages when the parties had an express contract, but it was procured by fraud

18  or is unenforceable or ineffective for some reason.").  Plaintiffs cite no authority for the rather

19  novel proposition that an insurer can be held liable in tort for *accurately* applying a contractual

20  limitation it knows to be invalid.  *Compare Opsal v. United Services Auto. Assn.*, 2 Cal. App. 4th

21  1197, 1205 (Cal. Ct. App. 1991) (denial of benefits based on insurer's interpretation of dicta in a

22  Supreme Court opinion was "erroneous" but not done in bad faith); *Gruenberg v. Aetna Ins. Co.*, 9

23  Cal.3d 566, 583 (Cal. 1973) (noting that bad faith generally involves fraud or "an intention to …

24  not perform a fixed promise").  Nevertheless, the Court agrees that such conduct *might* give rise to

25  a cause of action for bad faith if a plaintiff could plead facts demonstrating that the decision to

26  deny a claim was made or ratified by someone who knew the limitation was unenforceable.  *See*

27  *Richardson*, 25 Cal. App. 3d at 239 (denial of benefits constituted bad faith because the insurer's

28  own investigation revealed the claim to be "completely valid").  Here, Plaintiffs' assertion that

8

1  Defendant "must be aware of basic California insurance law regarding disclosure of exclusions and

2  limitations" simply because it is a "sophisticated business operation" falls short of that standard.

3  SAC ¶ 37.[3]  Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiffs' second

4  cause of action for bad faith WITHOUT PREJUDICE.

5  **3.       Third Cause of Action: Negligence**

6         In order to state a claim for negligence under California law, a plaintiff must establish four

7  required elements: (1) duty; (2) breach; (3) causation; and (4) damages.  *Ileto v. Glock Inc.*, 349

8  F.3d 1191, 1203 (9th Cir. 2003) (citing *Martinez v. Pacific Bell*, 225 Cal. App. 3d 1557 (Cal. Ct.

9  App. 1990)).  Whether a legal duty arises is a "question of law which is simply an expression of the

10 sum total of the policy considerations that lead a court to conclude that a particular plaintiff is

11 entitled to protection."  *Id.* (internal citations omitted).

12        Relying on *Logan v. John Hancock Mut. Life Ins. Co.*, 41 Cal. App. 3d 988, 996 (Cal. Ct.

13 App. 1974), Plaintiffs argue that Defendant had an "affirmative duty to point out and explain the

14 limitations in coverage because they were so inconsistent with their reasonable expectations of

15 coverage."  SAC ¶ 51.  In *Logan*, a Navy serviceman applied to purchase a life insurance policy at

16 an insurance sales office.  During the application process, the serviceman was not informed by the

17 insurance agent that the policy excluded coverage for death resulting from intoxication or

18 participation in a felony.  After the serviceman had completed the application, but before he

19 received the written policy in the mail, he was killed in a drunk-driving accident.  Citing the

20 intoxication exclusion, the insurer refused to pay any benefits under the policy.  The Court of

21 Appeal rejected the insurer's position, holding that "where a policy has not yet been issued, all

22 standard exclusions to the insurance coverage, which the insured would not reasonably expect,

23 must be called clearly and plainly to the attention of the insured if the insurer is to be permitted to

24 rely on these exclusions to avoid payment of benefits under the policy."  *Logan*, 41 Cal. App. 3d at

25

26 [3]       Plaintiffs argue that Defendant was "put on notice of its unreasonable position with
   correspondence from the Law Firm of Adelson, Hess and Kelly, and it continued to deny coverage,
27 and thus ratified and approved its wrongful conduct."  SAC ¶ 33.  Plaintiffs do not explain who
   "Adelson, Hess and Kelly" is nor what the firm's alleged correspondence contained.  The Court
28 therefore does not reach the issue of whether a legal opinion from a law firm regarding the
   enforceability of a contract could ever be the basis for a bad faith claim.

9

996.

Plaintiffs also cite *Fields v. Blue Shield of California*, 163 Cal. App. 3d 570, 579 (Cal. Ct. App. 1985), in which a health insurer denied coverage for psychiatric care based on an express limitation in a written insurance policy.  The court found that because the "limitation of coverage was placed, not in the limitation or exclusion section, but at the end of benefit granting provisions," it was not "clear" and "conspicuous" and was therefore unenforceable.  *Id.* at 57.

Neither *Logan* nor *Fields* suggests that an insurer who fails to "warn" an insured regarding coverage limitations may be held liable for negligence.[4]  Rather, both cases simply affirm the general rule of *contracts* that in order to be enforceable, provisions limiting coverage under an insurance policy must be clear and conspicuous.  The fact that the cap provision may be invalid could justify contract damages, but does not give rise to a separate cause of action for negligence. Because the Court reaches this conclusion as a matter of law, the Court GRANTS the motion to dismiss Plaintiffs' third cause of action WITH PREJUDICE.

**4.      Fourth Cause of Action: California Business and Professions Code § 17200**

California Business and Professions Code § 17200 proscribes "unlawful, unfair or fraudulent" business acts or practices.  "[T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur."  *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 181 (Cal. 1999) (internal citations omitted).

---

[4]      Under California law, a duty to warn an individual of dangers to which he has been or will be exposed turns on: (1) "the nature of the relationship between the party who has knowledge of the danger and the party who is threatened with potential injury;" (2) "the seriousness of the potential injury;" (3) "the extent to which the potential injury is a foreseeable result of the defendant's conduct;" (4) "the extent of the burden on the defendant of imposing a duty to warn;" and (5) "the likelihood that a warning will have a practical effect."  *Molsbergen v. United States*, 757 F.2d 1016, 1021 (9th Cir. 1985) (internal citations omitted).  Elsewhere in the  complaint, Plaintiffs allege that Defendant had a "special relationship with Plaintiffs that involved fiduciary-like duties of honesty, fairness, decency, humanity and integrity."  SAC ¶ 46.  However, Plaintiffs make no further argument regarding the existence of a duty to warn, nor do they cite any case applying the "duty to warn" factors to the relationship between an insurer and an insured.  The Court therefore declines to reach the issue of whether an insurance contract could *ever* give rise to a duty to warn sufficient to establish liability for negligence.

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

Plaintiffs allege that it was "unfair, unlawful and fraudulent to suggest and represent $1,000,000 in coverage…and then to bury in small print in a document purporting to *extend* coverage a monetary cap of $25,000, particularly when it is common knowledge that most people do not read their entire policies."  SAC ¶ 54 (emphasis in original).  Rather than dispute whether such conduct is covered by Section 17200, Defendant argues that Plaintiffs' claim is precluded by the holdings of *Moradi–Shalal v. Fireman's Fund Ins. Cos.*, 46 Cal.3d 287 (Cal. 1988) and *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1070 (Cal. Ct. App. 2004).

In *Moradi-Shalal*, the California Supreme Court held that the Unfair Insurance Practices Act ("UIPA"), Cal. Ins. Code, § 790 et seq., which prohibits "unfair and deceptive acts or practices in the business of insurance," does not create a private cause of action.  *See Moradi-Shalal*, 46 Cal. 3d at 304.  Instead, enforcement of the UIPA is left primarily to the California Insurance Commissioner.  *Id.*  In 1996, the California Court of Appeal found that *Moradi-Shalal* did not bar unfair competition claims against insurers based on common law theories, even though such alleged misconduct may *also* violate the provisions of the UIPA.  *See State Farm Fire & Casualty Co. v. Superior Court*, 45 Cal. App. 4th 1093 (Cal. Ct. App. 1996).  Therefore, when an insurer surreptitiously reduced the earthquake coverage offered in its homeowner insurance policies, plaintiffs were not precluded by *Moradi-Shalal* from bringing claims based on fraud, intentional infliction of emotional distress and bad faith under Section 17200.  *Id.* at 1108.

In 2004, the Court of Appeal expressly disagreed with *State Farm* in *Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*.  The *Textron* court cautioned that "parties cannot plead around *Moradi–Shalal*'s holding by merely relabeling their cause of action as one for unfair competition."  *Textron*, 118 Cal. App. 4th at 1070.  The court further reasoned that *State Farm*'s persuasiveness had been "undercut" by *Cel–Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (Cal. 1999), which disapproved of *State Farm*'s "amorphous" construction of the term "unfair business practice" as any conduct that "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Textron*, 118 Cal. App. 4th at 1071-72 (citing *State Farm Fire*, 45 Cal.

11

App. 4th at 1103-04.  Instead, *Cel–Tech* required that "any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition." *Id*. at 1072 (citing *Cel–Tech*, 20 Cal.4th at 186-87).  With this holding in mind, the *Textron* court concluded that where an insured's unfair competition claim is based on "the type of activities covered by the UIPA," it is barred by *Moradi-Shalal*.  *Id.* (claims related to the insurer's misrepresentation of both the terms of its policies and its obligations under them were foreclosed by *Moradi-Shalal*); *see also Safeco Ins. Co. v. Superior Court*, 216 Cal. App. 3d 1491, 1494 (Cal. Ct. App. 1990) ("We have no difficulty in deciding the Business and Professions Code  provides no toehold for scaling the barrier of *Moradi-Shalal* … . To permit plaintiff to maintain this action would render *Moradi-Shalal* meaningless.").

Here, Plaintiffs' unfair competition claim is based on the allegation that Defendant misrepresented the coverage provided under the policy by "burying" a limitation of liability clause in the endorsement.  SAC ¶ 54.  As such, the claim is clearly premised on the kind of conduct covered by the UIPA.  *See* Cal. Ins. Code § 790.03(h)(1) (prohibiting "knowingly … misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue.").  While this area of California law is unsettled,[5] the Court agrees with *Textron* that Plaintiffs may not plead around *Moradi-Shalal* by simply claiming a violation of the UCL rather than the UIPA.  However, because Plaintiffs may be able to plead a UCL claim that is not based on conduct covered by the UIPA, the Court GRANTS the motion to dismiss Plaintiffs' fourth cause of action WITHOUT PREJUDICE.

**5.     Fifth Cause of Action: Intentional Infliction of Emotional Distress**

Under certain circumstances, an insurance carrier's conduct in handling a claim may result in liability for intentional infliction of emotional distress.  *Hailey v. California Physicians' Service*,

---

[5]     The California Supreme Court is currently reviewing the Court of Appeal's decision in *Zhang v. Superior Court*, 100 Cal. Rptr. 3d 803 (Cal. Ct. App. 2009), which disagreed with *Textron* and held that *Moradi-Shalal* only barred UCL claims "if a plaintiff relies on conduct that violates the Unfair Insurance Practices Act, but is not otherwise prohibited." *Id*. at 807.  If the California Supreme Court upholds *Zhang*, Plaintiffs are invited to move for reconsideration of this Court's Order.

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

158 Cal. App. 4th 452, 473-74 (Cal. Ct. App. 2007) (internal citations omitted).  To state a cause of action for emotional distress, the plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Id*.  The conduct alleged must "go beyond all possible bounds of decency, and … be regarded as atrocious, and utterly intolerable in a civilized community."  *Coleman v. Republic Indemnity Ins. Co.*, 132 Cal. App. 4th 403, 416 (Cal. Ct. App. 2005).  Behavior may be considered outrageous if a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress.  *Hailey*, 158 Cal. App. 4th at 474.

In the insurance context, courts have rejected liability for emotional distress where the insurer simply delayed or denied insurance benefits, *Coleman*, 132 Cal.App.4th at 417, refused to accept a settlement demand within policy limits, *Isaacson v. California Ins. Guarantee Assn.*, 44 Cal.3d 775, 788–89 (Cal. 1988), or failed to investigate a claim and accused the insured of "trying to put something over on" the insurer, *Ricard v. Pacific Indemnity Co.* 132 Cal.App.3d 886, 889, 895 (Cal. Ct. App. 1982).  On the other hand, insurers have been held liable for emotional distress after attempting to induce an insured to surrender his policy by sending false and threatening letters, *Fletcher v. Western National Life Ins. Co.*, 10 Cal. App. 3d 376 (Cal. Ct. App. 1970), frivolously delaying disability payments despite knowledge of the insured's "fragile emotional condition," *Hernandez v. General Adjustment Bureau*, 199 Cal.App.3d 999 (Cal. Ct. App. 1988), or by rescinding coverage without good cause after learning that an insured has suffered an accident, *Hailey*, 158 Cal. App. 4th at 474.

### a.      Plaintiffs' allegations are insufficient to state a claim for emotional distress

In this case, Plaintiffs allege two separate grounds for recovery.  First, Plaintiffs assert that the policy was "intentionally designed" to mislead Defendant's clients, and that Defendant "knew or must have known it was violating California law [and] that the imposition of the coverage

13

**United States District Court**
For the Northern District of California

1  limitation was bound to cause great financial hardship and/or emotional distress to Wayne &

2  Peggy." SAC ¶ 58-59.  Second, Plaintiffs claim that because Defendant chose to litigate the state

3  court action instead of settling, Wayne Merritt was forced to undergo surgery for Diverticulitis,

4  leaving Peggy to "handle both the litigation and her husband's hospitalization, [causing] her

5  needlessly extreme emotional distress." *Id*. ¶ 21-22.

6  　　　　Plaintiffs' first claim is unavailing.  Where an insurer has been held liable for the infliction

7  of emotional distress, courts have invariably found it relevant that the responsible parties had

8  knowledge of a specific plaintiff's vulnerabilities.  *See Fletcher*, 10 Cal. App. 3d 376 (conduct

9  occurred after claims adjuster learned that plaintiff had become disabled); *Hernandez*, 199 Cal.

10  App. 3d at 1007 (claims adjusters knew of plaintiff's susceptibility to mental distress and repeated

11  attempts at suicide); *Hailey*, 158 Cal. App. 4th at 474 ("Blue Shield knew about Steve's car

12  accident, severe physical injuries, disability, and liability for mounting medical bills.  Given these

13  circumstances, Blue Shield knew it would cause plaintiffs to suffer emotional distress if it

14  rescinded Steve's health care coverage.").  In addition, all three cases dealt with health care

15  policies, which are inherently likely to involve extremely sensitive situations.  In contrast, the

16  complaint does not allege that Defendant had any special knowledge about Plaintiffs when

17  designing the GL policy, but rather that Defendant should have known the limitation was "bound to

18  cause financial hardship and/or emotional distress." SAC ¶ 59.  Such an allegation is not enough to

19  find Defendant's conduct "outrageous."

20  　　　　The second theory is also insufficient to support recovery for emotional distress.  An

21  insurer who undertakes the defense of an insured may decide whether or not to settle a claim, so

22  long as the decision is not unreasonable.  *See Risely v. Interinsurance Exch. of Auto. Club*, 183 Cal.

23  App. 4th 196, 208 (Cal. Ct. App. 2010) (where the insured is facing potential liability in excess of

24  the policy and the settlement offer is within policy limits, a decision to litigate may be

25  unreasonable).  The Court views with some skepticism Defendant's rejection of the settlement

26  offer when Plaintiffs were responsible for paying most of the potential damages.  However,

27  Plaintiffs do not suggest that Defendant did not believe the decision was in their best interests.

28  *Compare Fletcher*, 10 Cal. App. 3d 376 (letter accusing plaintiff of having an undisclosed medical

14

1  condition was based on a "complete absence of any investigation…[or] any facts."); *Hernandez*,

2  199 Cal. App. 3d at 1007 (payments were repeatedly late although there was "no question" plaintiff

3  was entitled to benefits).  Nor do they contend that the strategy was *intended* to cause emotional

4  distress, even though it allegedly did so.  SAC ¶ 18-20.  Thus, although Defendant's refusal to

5  settle appears in hindsight to be a mistake, it was not "outrageous."  However, because there may

6  be a set of facts on which Defendant could be liable for emotional distress, the Court GRANTS

7  Defendant's motion to dismiss Plaintiffs' fifth cause of action WITHOUT PREJUDICE.

8  **6.      Sixth Cause of Action: Interference with a Protected Property Interest**

9          Plaintiffs allege that they held a "protected property interest" in their insurance policy, and

10 that Defendant interfered with that interest by "refusing to pay benefits owed."  SAC ¶ 63-65.

11 Plaintiffs rely on *Fletcher*, 10 Cal. App. 3d at 401-02, in which the California Court of Appeal held

12 that where an insurer is found liable for the tort of intentional infliction of emotional distress, "such

13 conduct …constitutes a tortious interference with a protected property interest of its insured for

14 which damages may be recovered to compensate for all detriment proximately resulting therefrom,

15 including economic loss as well as emotional distress resulting from the conduct or from the

16 economic losses caused by the conduct, and, in a proper case, punitive damages."

17         Plaintiffs cite no case adopting *Fletcher*'s endorsement of the tort of interference with a

18 protected property interest.  The District Court for the Eastern District of California has recently

19 explained that "subsequent courts have characterized the 'tortious interference with a protected

20 property interest' language in *Fletcher* as more appropriately appraised as a claim for tortious

21 breach of a duty imposed by the contractual implied covenant of good faith and fair dealing."

22 *Valley Air Conditioning & Repair, Inc. v. Benefit Life Ins. Co.*, 2007 U.S. Dist. LEXIS 70111, *8

23 (E.D. Cal. Sept. 19, 2007) (citing *Hand v. Farmers Ins. Exchange*, 23 Cal. App. 4th 1847, 1854

24 (Cal. Ct. App. 1994); *McDowell v. Union Mut. Life Ins. Co.*, 404 F. Supp. 136, 146 (C.D. Cal.

25 1975)).  The *Valley Air* court therefore dismissed the plaintiff's claim for interference with a

26 protected property interest, but allowed amendment of his breach of the covenant of good faith and

27 fair dealing claim to "include factual allegations that Plaintiff has suffered economic loss as a result

28

15

1  of [the insurer's] alleged wrongful withholding of insurance proceeds." *Valley Air*, 2007 U.S. Dist.

2  LEXIS 70111 at *11-12.

3      The Court agrees that Plaintiffs' claim is better characterized as a breach of the covenant of

4  good faith and fair dealing.  Plaintiffs may amend their breach of the covenant of good faith and

5  fair dealing claim as described by *Valley Air*.   Therefore, the Court GRANTS Defendant's motion

6  to dismiss Plaintiffs' sixth cause of action WITH PREJUDICE.

7  **7.      Seventh Cause of Action: Fraud**

8      Plaintiffs' seventh cause of action in fact includes claims for (1) intentional

9  misrepresentation, (2) concealment, (3) promise without intention of performing, and (4) negligent

10 misrepresentation.  SAC ¶¶ 66-75.  Except for the claim for negligent misrepresentation, all of

11 these are species of fraud.  *See Starnet Int'l AMC Inc. v. Kafash*, 09-CV-04301-LHK, 2011 WL

12 31269 (N.D. Cal. Jan. 5, 2011) ("Intentional misrepresentation is a claim for fraud."); *Baggett v.*

13 *Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (noting that the

14 misrepresentation element of a fraud claim may be proved by showing concealment); *Lazar v.*

15 *Superior Court*, 12 Cal. 4th 631, 638 (Cal. 1996) ("'Promissory fraud' is a subspecies of the action

16 for fraud and deceit.").  Under California law, the "indispensable elements of a fraud claim include

17 a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."

18 *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. Cal. 2003) (internal citations

19 omitted).  Negligent misrepresentation requires a similar showing, although the intent requirement

20 is relaxed.  *See Nat. Union Fire Ins. Co. of Pittsburgh, PA v. Cambridge Integrated Servs. Grp.,*

21 *Inc.*, 171 Cal.App.4th 35, 89 (Cal. Ct. App. 2009).  In the instant case, Defendant focuses on

22 Plaintiffs' alleged inability to show reliance and failure to plead with sufficient particularity.

23      **a.      Plaintiffs are not barred from showing reasonable reliance simply because**
24      **they received the GL Policy**

25      Defendant first argues that where an insured fails to read and ascertain the terms of an

26 insurance policy, there can be no reasonable reliance as a matter of law.  Defendant cites *Hadland*,

27 24 Cal. App. 4th at 1586, in which the California Court of Appeal upheld a trial court finding that

28 because the insured admitted he had not read the policy, there was "no evidence of justifiable

16

reliance because … the plaintiff is up against the case law duty to read."  As noted above, *Hadland* is inapplicable here because the cap provision is not clear and conspicuous.  Furthermore, unlike in *Hadland*, Plaintiffs have not indicated that they failed to read the GL policy.

Defendant also relies on *Brown v. Wells Fargo Bank, N.A.*, 168 Cal. App. 4th 938, 959 (Cal. Ct. App. 2008).  In *Brown*, the court held that where the parties to a contract are dealing at arm's length, it is "not reasonable to fail to read a contract."  *Id.*  However, "if the defendant is in a fiduciary relationship with the plaintiff which requires the defendant to explain the terms of a contract between them, the plaintiff's failure to read the contract would be reasonable."  *Id.*

California courts have recognized that insurance providers are subject to fiduciary or fiduciary-like duties.  *See, e.g.*, *Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 820 (Cal. 1979) ("Insurers hold themselves out as fiduciaries, and with the public's trust must go private responsibility consonant with that trust."); *20th Century Ins. Co. v. Superior Court*, 90 Cal. App. 4th 1247, 1266 (Cal. Ct. App. 2001) ("The significant public interest in the special relationship between the insured and insurer justifies the availability of tort remedies, and distinguishes insurance contracts from other types of contracts.").  In addition, as noted above, the California Supreme Court has explicitly held that "the burden of making coverage exceptions and limitations conspicuous, plain and clear rests with the insurer."  *Haynes*, 32 Cal. 4th at 1204 (internal citations omitted).  The Court therefore concludes that Plaintiffs' receipt of the policy alone does bar their allegations that they reasonably relied on the prominently displayed coverage description contained in the declarations.

### b.  Plaintiffs' fraud claims are not pled with sufficient particularity

Fed. R. Civ. P. 9(b) requires that, when averments of fraud are made, the allegations must "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong."  *Vess*, 317 F.3d at 1105 (internal citations and quotation marks omitted).  Allegations of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged.  *Id.* (internal citations omitted).  "[A] plaintiff must set forth more than the neutral facts necessary to identify the

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

transaction.  The plaintiff must set forth what is false or misleading about a statement, and why it is false."  *Decker v. Glenfed, Inc. (In re Glenfed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994).

Defendant contends that Plaintiffs have failed to adequately plead the reliance and damages elements of their fraud claims under the stricter standard of Rule 9(b).  Defendant relies on *McManus v. American Express Tax & Bus. Servs.*, 67 F. Supp. 2d 1083, 1089 (D. Ariz. 1999), in which the court held that "a mere conclusory allegation of reliance is not sufficient to defeat a motion to dismiss: the plaintiff must plead specific facts explaining how he relied on the representation and why that reliance was reasonable."  The *McManus* court found that because the plaintiff had not alleged "a single concrete action or decision he claims to have made in reliance upon Defendants' compilation of … financial statements," he could not state a claim for fraud.  *Id.* at 1089.

While *McManus* is not binding precedent in the Northern District of California, the Court agrees that the reliance and damages elements of Plaintiffs' claims must be pled with particularity.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (where a plaintiff claims fraud, the "*entire* complaint must … be pleaded with particularity.") (emphasis added).  Plaintiffs have not asserted that they took any action in reliance on Defendant's alleged misrepresentations regarding the policy's coverage.  They have also failed to show that they suffered any damages as a result of Defendant's alleged *fraud*, rather than its breach of contract.  *See Brewer v. Indymac Bank*, 609 F. Supp. 2d 1104, 1121 (E.D. Cal. 2009) ("[I]n an action for fraud and deceit a cause of action is stated when the facts constituting the fraud are alleged and a *resulting injury* is pleaded.") (citing *Hartzell v. Myall*, 115 Cal.App.2d 670, 677 (Cal. Ct. App. 1953) (emphasis added).  That is, Plaintiffs must explain why discovering the cap provision at the time of the state court action caused harm beyond simply depriving them of a benefit owed under the contract.  Because reliance and resulting damages are essential elements of all four fraud-related claims, the Court GRANTS Defendant's motion to dismiss Plaintiffs' seventh cause of action.  However, as Plaintiffs may be able to allege facts sufficient to state a claim for fraud, dismissal is WITHOUT PREJUDICE.

**8.    Eighth Cause of Action: Reformation**

To state a claim for reformation under California law, a plaintiff must plead that "by reason

18

United States District Court
For the Northern District of California

1   of fraud practiced by one of the parties, or of the mutual mistake of the parties or of a mistake of

2   one of them, which the other at the time knew or suspected, there were omitted from the instrument

3   certain material terms and conditions.  In other words, that the language of the writing failed, for

4   some reason, to express the intention of the parties." *Philips Med. Capital, LLC v. Med. Insights*

5   *Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1046-47 (N.D. Cal. 2007) (quoting *Pascoe v.*

6   *Morrison,* 219 Cal. 54, 56 (Cal. 1933)).

7          Here, Plaintiffs seek reformation of the GL policy to "conform to Plaintiffs' understanding

8   [that the contract provides] $1,000,000 in coverage."  SAC ¶ 82.  Plaintiffs must therefore show

9   that any "misunderstanding" regarding the terms of the contract was the result of fraud, mutual

10  mistake or unilateral mistake.  As discussed above, Plaintiffs have failed to state a claim for fraud,

11  and clearly do not allege mutual mistake.  *See Renshaw v. Happy Valley Water Co.*, 114 Cal. App.

12  2d 521, 524 (Cal. Ct. App. 1952) (mutual mistake requires a showing that the parties "share[d] the

13  same misconception").  Plaintiffs also have not pled facts sufficient to justify reformation on the

14  basis of unilateral mistake.  *See Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1055

15  (C.D. Cal. 2008) (in order to be granted reformation based on unilateral mistake, a plaintiff must

16  show that he "made a mistake at the time of contracting, and that the mistake was known to or

17  suspected by defendants").  Constructive notice of the other party's mistake is not a sufficient

18  ground for reformation.  *La Mancha Dev. Corp. v. Sheegog*, 78 Cal. App. 3d 9, 16 (Cal. Ct. App.

19  1978).  The complaint does not allege that Defendant knew or suspected at the time of contracting

20  that Plaintiffs did not understand the policy's coverage to be limited to $25,000.  Indeed, Plaintiffs

21  fail to allege *any* facts concerning Defendant's knowledge of Plaintiffs' state of mind.

22  Accordingly, the Court GRANTS Defendant's motion to dismiss the eighth cause of action

23  WITHOUT PREJUDICE.

24  **9.     Ninth Cause of Action: Violation of Insurance Code § 785.**

25          California Insurance Code section 785 states: "All insurers, brokers, agents, and others

26  engaged in the transaction of insurance owe a prospective insured who is 65 years of age or older, a

27  duty of honesty, good faith, and fair dealing.  This duty is in addition to any other duty, whether

28  express or implied, that may exist."

1    The complaint does not allege that either Wayne or Peggy Merritt is "65 years of age or

2    older."  In their opposition, Plaintiffs note that Wayne Merritt was over 65 years old at the time

3    coverage was obtained.  However, "in determining the propriety of a Rule 12(b)(6) dismissal, a

4    court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in

5    opposition to a defendant's motion to dismiss."  *Schneider v. California Dept. of Corr.*, 151 F.3d

6    1194, 1201 n.1 (9th Cir. 1998) (emphasis in original).  The Court therefore GRANTS Defendant's

7    motion to dismiss the ninth cause of action WITHOUT PREJUDICE.

8    **10.    Claims for Damages**

9         **a.    Plaintiffs state a claim for general and special damages**

10   Defendant complains that the SAC provides insufficient "notice of the damages sought to

11   be recovered."  MTD ¶ 10.  However, in Paragraph 39 of the SAC, Plaintiffs allege that as a result

12   of Defendant's conduct, they have "sustained financial losses, severe emotional distress, medical

13   bills, including hospitalization, attorney fees and costs, [and] damage to credit."  Such allegations

14   are sufficient to withstand a motion to dismiss claims for damages.  *See Jenkins v. Commonwealth*

15   *Land Title Ins. Co.*, 95 F.3d 791, 799 (9th Cir. 1996) ("Jenkins' allegation that he has, as a 'direct

16   and proximate result' of Commonwealth's violation, 'sustained special and general damages'

17   suffices to withstand a motion to dismiss under Rule 12(b)(6).").[6]  The Court therefore DENIES

18   Defendant's motion to dismiss Plaintiffs' claims for general and special damages.

19        **b.    Plaintiffs do not state a claim for punitive damages**

20   Defendant also moves to dismiss Plaintiffs' claim for punitive damages.  Under California

21   law, punitive damages may be appropriate "where it is proven by clear and convincing evidence

22   that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294.  Malice

23   may be shown where the defendant exhibits "the motive and willingness to vex, harass, annoy, or

24   injure," *Nolin v. Nat'l Convenience Stores, Inc.*, 95 Cal. App. 3d 279, 285 (Cal. Ct. App. 1979), or

25

26   [6]    Defendant does not challenge the propriety of Plaintiffs' request for attorney's fees under
Cal. Code Civ. P. § 1021.5, Cal. Bus. & Prof. Code § 17200, *Spiegler v. Home Depot U.S.A., Inc.*,
27   552 F. Supp. 2d 1036, 1055 (C.D. Cal. 2008).   and *Brandt v. Superior Court*, 37 Cal. 3d 813 (Cal.
1985).  Nor does Defendant appear to question whether Plaintiffs' alleged losses are causally
28   connected to Defendant's conduct.  The Court therefore does not reach the issue of whether such
awards would be appropriate at this time.

20

United States District Court
For the Northern District of California

1  a "conscious disregard of the rights and safety of others," *Potter v. Firestone Tire & Rubber Co.*, 6

2  Cal.4th 965, 1000 (Cal. 1993).  Of course, "the mere allegation that an intentional tort was

3  committed is not sufficient to warrant an award of punitive damages.  Not only must there be

4  circumstances of oppression, fraud or malice, but facts must be alleged in the pleading to support

5  such a claim." *Grieves v. Superior Court*, 157 Cal. App. 3d 159, 166 (Cal. Ct. App. 1984).

6        Punitive damages may not be awarded for breach of contract.  *City of Hope Nat. Med. Ctr.*

7  *v. Genentech, Inc.*, 43 Cal.4th 375, 392 (Cal. 2008).  On the other hand, punitive damages may be

8  appropriate where an insurer commits fraud or breaches the covenant of good faith and fair dealing.

9  *See, e.g.*, *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 817 (Cal. 1979) (allowing a punitive

10  damages award against an insurer that acted in bad faith by failing to properly investigate its

11  insured's claim).

12        The Court has dismissed Plaintiffs' claims for fraud, intentional infliction of emotional

13  distress, and breach of the covenant of good faith and fair dealing.  Punitive damages are therefore

14  unavailable.  However, because these claims were dismissed without prejudice, the Court

15  GRANTS the motion to dismiss Plaintiffs' claim for punitive damages WITHOUT PREJUDICE.

16

17  **IV. CONCLUSION**

18        In sum, the Court denies Defendant's motion to dismiss Plaintiffs' claim for breach of

19  contract and for special and general damages.  The second, fourth, fifth, seventh, eighth and ninth

20  causes of action and the claim for punitive damages are dismissed without prejudice.  The third and

21  sixth causes of action are dismissed with prejudice.

22        If Plaintiffs wish to amend their complaint, they must do so within 21 days of this order.

23  Plaintiffs may not add new claims or parties without seeking Defendant's consent or leave of the

24  Court pursuant to Fed. R. Civ. P. 15.

25

26

27

28

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

1    **IT IS SO ORDERED.**

2

3    Dated: October 21, 2011

_____
LUCY H. KOH
United States District Judge

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22