United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| WAYNE MERRITT MOTOR CO., INC. dba RV'S OF MERRITT; WAYNE MERRITT; PEGGY MERRITT, | ) ) ) | Case No.: 11-CV-01762-LHK |
| | ) | ORDER GRANTING IN PART AND |
| Plaintiffs, | ) ) | DENYING IN PART DEFENDANT'S MOTION TO DISMISS |
| v. | ) | |
| | ) | |
| NEW HAMPSHIRE INSURANCE COMPANY, and Does 2-100, | ) ) | |
| | ) | |
| Defendants. | ) ) | |

Plaintiffs Wayne Merritt Motor Co., Inc. dba RV's of Merritt, Wayne Merritt ("Mr. Merritt"), and Peggy Merritt ("Mrs. Merritt") (collectively "Plaintiffs") bring this diversity action against Defendant New Hampshire Insurance Company ('Defendant"), alleging tort and contract claims related to Defendant's refusal to fully indemnify Plaintiffs for a judgment rendered against them in state court.  Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.  The Court found this matter suitable for determination without oral argument and accordingly vacated the hearing set for July 26, 2012.  *See* Civ. L. R. 7-1(b). Having considered the parties' submissions and the relevant law, and for the reasons discussed

1

herein, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss.  The case management conference scheduled for July 26, 2012, remains as set.

## I.   BACKGROUND

### A. Factual Background

Plaintiffs owned and operated a dealership specializing in recreational vehicles ("RVs") called "RV's of Merritt" in Scotts Valley, California.  ECF No. 36, Third Am. Compl. ("TAC") ¶ 7.  Plaintiffs purchased from Defendant a Garage Liability insurance policy (the "GL policy").  *Id.* ¶ 8.  Plaintiffs paid an annual premium payment of $22,136 for the GL policy.  *Id.* ¶ 45.

The GL policy's "declarations page" "prominently" advertised $1,000,000 in "single occurrence coverage" and $2,000,000 in "aggregate coverage."  *Id.* ¶ 10.  However, the policy was also accompanied by an addendum entitled "GARAGE POLICY EXTENSION ENDORSEMENT" (the "endorsement").  *Id.* ¶ 13.  On the tenth page of the endorsement, there was a provision entitled "LIMIT OF INSURANCE," which stated that coverage for each "suit" or claim for "product related damage" was limited to $25,000 (the "cap provision").  *Id.* ¶ 15.

On August 31, 2007, Plaintiffs were sued in state court over conduct related to the sale of an RV (the "state court action").  *See* ECF No. 37-1, 2d Request for Judicial Notice ("2d RJN") Ex. A.[1]  Defendant undertook at least some aspects of Plaintiffs' defense.  In June 2007, Defendant rejected a settlement offer of $110,000.  *Id.* ¶ 36.  The case eventually went to trial, "the stress from which landed [Plaintiff] Mr. Merritt in the hospital for 5-days [sic]."  *Id.* ¶ 24.  As a result, "Plaintiff Peggy [Mrs. Merritt] was forced to handle both the litigation and her husband's hospitalization, which caused her extreme emotional distress as well."  *Id.*

On September 2, 2009, the jury returned a special verdict holding Plaintiffs liable for intentional misrepresentation, concealment, negligent misrepresentation, unlawful practice in the sale of consumer goods, and breaches of contract and the implied covenant of good faith and fair dealing.  *See* ECF No. 27-1, Request for Judicial Notice ("RJN"), Ex. A (Certified Copy of Special

---

[1] Courts routinely take judicial notice of court records, and thus the Court takes judicial notice of the First Amended Complaint filed in the state court action.  *See United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007); *Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001); Fed. R. Civ. 201(b).

United States District Court
For the Northern District of California

Verdict Form, *Agard v. Wayne Merritt Motor Co.*, Santa Cruz County Superior Court Case No. CV 157820).[2]  The parties then settled their dispute for $177,000, of which approximately $77,000 was attributable to attorney's fees.  TAC ¶¶ 26-28 & Ex. 11.  Defendant indemnified Plaintiffs for the entire attorney's fees award.  *Id.* ¶ 36.  However, claiming that the cap provision limited any further liability, Defendant indemnified Plaintiffs for only $25,000 of the remaining $100,000 owed under the settlement.  *Id.* ¶ 29.  In order to pay the remaining $75,000, Plaintiffs had to obtain a loan and place a deed of trust on their property.  *Id.* ¶ 44.

## B.  Procedural History

On February 14, 2011, Plaintiffs commenced an action against Defendant[3] in the Superior Court of the County of Santa Cruz.  *See* ECF No. 1 (Notice of Removal) ¶ 2 & Ex. 1.  Before serving Defendant, Plaintiffs filed a First Amended Complaint ("FAC") in state court on March 3, 2011.  *Id.* Ex. 2.  After being served on March 16, 2011, Defendant timely removed the action on April 11, 2011, pursuant to 28 U.S.C. § 1441, asserting diversity jurisdiction under 28 U.S.C. §§ 1332(a).  *See id.* ¶¶ 3, 6.

Plaintiffs filed a Second Amended Complaint ("SAC"), the first in federal court, on May 16, 2011, alleging causes of action for: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligence; (4) unfair business practices; (5) intentional infliction of emotional distress; (6) interference with a protected property interest; (7) fraud; (8) reformation; and (9) violations of Cal. Ins. Code § 785.  *See* ECF No. 17.  Plaintiffs sought general, special and punitive damages, attorney's fees, reformation and injunctive relief.  *Id.*  Defendant filed a motion to dismiss all nine causes of action pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 18.  The Court denied the motion as to the breach of contract claim; granted the motion with prejudice as to the claims for negligence and interference with a protected property interest; and

---

[2] The Court previously took judicial notice of the certified copy of the special verdict form in the state court action.  *See* ECF No. 34 at 2 n.1.

[3] The original state court complaint and FAC also named American International Group, Inc. ("AIG") as a defendant.  *See* ECF No. 1, Exs. 1 & 2.  Plaintiffs voluntarily dismissed AIG from the state court action on March 31, 2011.  *See* ECF No. 1 ¶ 4 & Ex. 4.  The sole non-Doe defendant named in both the Second Amended Complaint and the Third Amended Complaint is New Hampshire Insurance Co.

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    granted the motion as to the remaining causes of action with leave to amend.  *See* ECF No. 34

2    ("Order") at 21.

3         Plaintiffs filed a Third Amended Complaint ("TAC"), at issue here, on November 9, 2011.

4    ECF No. 36 ("TAC").  Plaintiffs' TAC asserts claims for: (1) breach of contract; (2) breach of the

5    implied covenant of good faith and fair dealing; (3) unfair business practices in violation of

6    California Business & Professions Code § 17200 ("Unfair Competition Law" or "UCL"); (4)

7    intentional infliction of emotional distress; (5) fraud; (6) reformation; and (7) violation of

8    California Insurance Code § 785.  TAC ¶¶ 66-134.  Defendant again moved to dismiss.  ECF No.

9    37 ("Mot.").  Plaintiffs filed an opposition, to which Defendant replied.  *See* ECF Nos. 38

10   ("Opp'n"), 39 ("Reply").

11   **II.    LEGAL STANDARDS**

12         **A.  Motion to Dismiss Under Rule 12(b)(6)**

13         Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

14   action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

15   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

16   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

17   defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

18   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

19   unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).   In ruling on

20   a 12(b)(6) motion to dismiss, the Court generally may look only at the face of the complaint and

21   documents attached to or referenced in the complaint.  *See Coto Settlement v. Eisenberg*, 593 F.3d

22   1031, 1038 (9th Cir. 2010); *Lee*, 250 F.3d at 688-89; Fed. R. Civ. P. 10(c).  The Court "accept[s]

23   factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable

24   to the non-moving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th

25   Cir. 2008).

26         Nonetheless, the Court need not accept as true allegations contradicted by judicially

27   noticeable facts, and the "[C]ourt may look beyond the plaintiff's complaint to matters of public

28   record" without converting the Rule 12(b)(6) motion into one for summary judgment.  *Shaw v.*

**United States District Court**
For the Northern District of California

4

1    *Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir.), *cert. denied*, 516 U.S. 964 (1995); *see Van Buskirk v.*

2    *Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Schwarz v. United States*, 234 F.3d

3    428, 435 (9th Cir. 2000).  Nor is the Court required to "'assume the truth of legal conclusions

4    merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061,

5    1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).

6    Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion

7    to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and

8    citations omitted); *accord Iqbal*, 556 U.S. at 678.

9        **B.  Leave to Amend**

10       Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

11   given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

12   decisions on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d

13   1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).

14   Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad

15   faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments

16   previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'"

17   *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (quoting *Foman v.*

18   *Davis*, 371 U.S. 178, 182 (1962)) (alterations in original).  "[W]here the plaintiff has previously

19   been granted leave to amend and has subsequently failed to add the requisite particularity to its

20   claims, '[t]he district court's discretion to deny leave to amend is particularly broad.'"  *Zucco*

21   *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) (quoting *In re Read-Rite*

22   *Corp.*, 335 F.3d 843, 845 (9th Cir. 2003)).  Indeed, repeated failure to cure a complaint's

23   deficiencies by previous amendment is reason enough to deny leave to amend.  *Abagninin v.*

24   *AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008) (citing *Foman*, 371 U.S. at 182; *Allen v.*

25   *City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990)).

26   **III.    DISCUSSION**

27       In moving to dismiss all of Plaintiff's claims, Defendant argues that: (1) Plaintiffs' claims

28   are barred by California Insurance Code § 533; (2) each of Plaintiffs' seven causes of action is

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    insufficiently pled; (3) Peggy Merritt's claims are not legally cognizable because she is not a

2    named insured under the Products Related Damages Coverage of the Endorsement; and (4)

3    Plaintiffs' claim for punitive damages is insufficiently pled.  The Court addresses each of

4    Defendant's arguments in turn.

5    **A.  Dismissal under California Insurance Code § 533**

6          Defendant contends that California Insurance Code § 533 bars Plaintiffs from recovering

7    for any of their claims because a jury in the underlying state court action found Plaintiff Wayne

8    Merritt Motor Co. liable for the willful torts of intentional misrepresentation and concealment.[4]

9    California Insurance Code § 533 provides that "[a]n insurer is not liable for a loss caused by the

10   wilful act of the insured."  "The public policy underlying section 533 is to discourage willful torts."

11   *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009, 1021 (1991) (citing *Tomerlin v. Canadian*

12   *Indem. Co.*, 61 Cal. 2d 638, 648 (1964)).  Under California law, "section 533 is a part of every

13   insurance contract and is equivalent to an exclusionary clause in the contract itself."  *Allstate Ins.*

14   *Co. v. Gilbert*, 852 F.2d 449, 451 (9th Cir. 1988) (citations omitted).  Because § 533 is considered

15   under California law to be an exclusionary clause, "the insurer has the burden of proving that the

16   requested claims are matters uninsurable under the law."  *Unified W. Grocers, Inc. v. Twin City*

17   *Fire Ins. Co.*, 457 F.3d 1106, 1111 (9th Cir. 2006) (internal quotation marks and citation omitted).

18         Defendant asserts that Plaintiffs are barred from making their claims because the jury in the

19   underlying state court action found Wayne Merritt Motor Co. liable for intentional

20   misrepresentation, concealment/suppression of fact, negligent misrepresentation, unlawful practice

21   in the sale of consumer goods in violation of California Civil Code §§ 1770 *et seq.*, breach of

22   contract, and breach of the implied covenant of good faith and fair dealing.  Mot. at 14; *see* RJN

23   Ex. A, ECF No. 27-1.  The jury in the underlying state court action also specially found that Wayne

24   Merritt Motor Co. engaged in conduct with malice, oppression or fraud related to the causes of

---

[4] In previously moving to dismiss Plaintiffs' Second Amended Complaint, Defendant waived its § 533 argument by failing to raise it until its reply brief, and thus the Court did not previously address the merits of this defense.  The Court granted Defendant leave to renew this argument, however, if Plaintiffs filed an amended complaint.  *See* Order at 7.

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   action for intentional misrepresentation of fact, concealment, and unlawful practice in the sale of

2   consumer goods.  RJN Ex. A at 1-4.

3          The Court agrees with Defendant that Plaintiffs' claims appear to be uninsurable under §

4   533, which bars coverage for fraud.  *See St. Paul Fire & Marine Ins. Co. v. Weiner*, 606 F.2d 864,

5   870 (9th Cir. 1979); *Oakland-Alameda Cnty. Coliseum, Inc. v. Nat'l Union Fire Ins. Co. of*

6   *Pittsburg, Pa.*, 480 F. Supp. 2d 1182, 1197 (N.D. Cal. 2007).  The California Court of Appeal has

7   clarified that a "willful act" for purposes of § 533 exclusion is "an act deliberately done for the

8   express purpose of causing damage or intentionally performed with knowledge that damage is

9   highly probable or substantially certain to result."  *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12

10  Cal. App. 4th 715, 742 (1993).  "Therefore, section 533 precludes indemnification for liability

11  arising from deliberate conduct that the insured expected or intended to cause damage."  *Id.* at 743.

12  In light of the jury's special verdict findings that Plaintiffs acted with malice, oppression, or fraud

13  and specific intent to defraud the state court plaintiffs, Defendant has a strong argument that § 533

14  precludes Plaintiffs from seeking indemnification under the insurance policy.

15         Plaintiffs present two main arguments why their claims are not barred by Insurance Code §

16  533.  First, they argue that "there are no conclusive findings against Plaintiffs" because they settled

17  their claims with the state court plaintiffs.  Opp'n at 22.  This argument is unavailing, as courts

18  have found coverage for willful acts precluded under § 533 even where the claims were ultimately

19  settled.  *See Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 490 (1998).  Plaintiffs cite

20  *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263 (1966), for the proposition that a verdict or findings

21  "are admissible but not conclusive as to whether the insured's acts were uninsurable as 'intentional

22  acts.'"  Opp'n at 22.  *Gray*, however, addressed the relevance of a general verdict of "willfulness"

23  for purposes of determining whether the conduct was a "willful" act for purposes of § 533

24  exclusion.  65 Cal. 2d at 277.  Here, the jury specially found that Plaintiffs acted with malice or

25  specific intent to defraud, and thus there is no ambiguity as to whether their accused conduct was

26  "willful" as defined under § 533.

27         Plaintiffs' second argument, however, raises a substantial complication to Defendant's §

28  533 defense.  Plaintiffs assert an estoppel argument, arguing that Defendant undertook

7

representation of Plaintiffs in the state court action without ever asserting that coverage would be limited by § 533. Moreover, Plaintiffs argue that Defendant has already provided $25,000 in coverage, which essentially constitutes a concession that coverage is not barred by § 533, and that Defendant should therefore be estopped from now taking the position that § 533 bars all of Plaintiffs' claims. Opp'n at 22-23.

Plaintiffs have raised at least a colorable estoppel argument. California courts have "[found] no dictate in public policy that prevents an estoppel from imposing liability found upon an intentional tort." *Tomerlin*, 61 Cal. 2d at 640; *see id.* at 648-49. For instance, where an insurer engages an attorney to defend an insured in a lawsuit and represents that the insurer will afford full coverage, and the insured, relying on such representation, withdraws his personal attorney from participation in the lawsuit to his detriment, the insurer is estopped from later denying liability under the policy. *Id.* Here, Plaintiffs allege that, although the state court action was filed in August 2007, and Defendant undertook legal representation of Plaintiffs in that action, Defendant did not issue a "Reservation of Rights" letter to Plaintiffs until one year later, on August 28, 2008, in which it finally pointed out the $25,000 coverage limitation under the endorsement and the fact that willful conduct would not be covered. TAC ¶ 21 & Ex. 4. In another letter dated September 29, 2008, Defendant admitted that "Our coverage letters are not exhaustive." TAC ¶ 23 & Ex. 5. These allegations give rise to a plausible claim that Defendant failed to timely reserve its rights, causing Plaintiffs to rely detrimentally on Defendant's legal defense rather than engaging their own attorney. Accordingly, the Court does not find Defendant's § 533 defense amenable to resolution on a motion to dismiss. Defendant's motion to dismiss all of Plaintiffs' claims as barred under California Insurance Code § 533 is therefore denied.

### B.  Individual Causes of Action

#### 1.  Breach of Contract

To state a claim for breach of contract, a plaintiff must allege: (1) the existence of a valid contract; (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *First Commercial Mortg. Co. v. Reece*, 89 Cal. App. 4th 731, 745 (2001). The Court already previously denied Defendant's motion to dismiss the breach of contract

8

claim, determining that Plaintiffs' allegations, construed in the light most favorable to Plaintiffs, were sufficient to show that the cap provision is unenforceable.  Order at 4.  Notwithstanding the Court's prior ruling, and without seeking leave to file a motion for reconsideration, as required by Civil Local Rule 7-9, Defendant again moves to dismiss this cause of action.  Defendant argues that a motion for reconsideration is unnecessary because Plaintiffs have "expanded, changed and re-cast their Breach of Contract" claim, such that the cause of action has been "radically changed." Mot. at 9.  Defendant argues that Plaintiffs "have failed to identify even one of the contractual obligations . . . which was not performed by NHIC." *Id.*

The Court is not persuaded that it needs to revisit this issue.  As explained in the Court's previous Order, the facts as pled "establish[ed] a reasonable expectation that the GL policy provided $1,000,000 in single occurrence coverage" and support a claim that "the cap provision is not 'conspicuous, plain, and clear' and is therefore unenforceable."  Order at 5-6.  The substance of Plaintiffs' breach of contract claim is materially identical to the claim pleaded in their Second Amended Complaint.  While Plaintiffs have undoubtedly expanded their factual allegations, Defendant does not argue that Plaintiffs have pled themselves out of a claim, and Defendant advances no new arguments why Plaintiffs have failed to state a claim.  In essence, Defendant asks the Court to make a summary judgment determination on the merits of Plaintiffs' breach of contract claim.  Accordingly, Defendant's motion to dismiss Plaintiffs' first cause of action is again DENIED.

### 2.   Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs' second cause of action is breach of the covenant of good faith and fair dealing, which is a covenant implied in all insurance contracts under California law.  *See Hanson ex rel. Hanson v. Prudential Ins. Co. of Am.*, 783 F.2d 762, 766 (9th Cir. 1985).  The implied covenant of good faith and fair dealing prevents a party from acting in bad faith to frustrate the contract's actual benefits.  *Guz v. Bechtel Nat'l Inc.*, 24 Cal. 4th 317, 353 n.18 (2000).  A claim for breach of the implied covenant of good faith and fair dealing requires that: "(1) benefits due under the policy must have been withheld; and (2) the reason for withholding benefits must have been unreasonable or without proper cause." *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1151 (1990).  The mere

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

**United States District Court**
For the Northern District of California

denial of benefits does not demonstrate bad faith.  *See Safeco Ins. Co. of Am. v. Guyton*, 692 F.2d

551, 557 (9th Cir. 1982) (where policy dispute involved a genuine legal issue concerning liability,

insurer could not have been acting in bad faith by refusing to pay claim).  Rather, "[t]here must be

proof the insurer failed or refused to discharge its contractual duties not because of an honest

mistake, bad judgment, or negligence, 'but rather by a conscious and deliberate act, which unfairly

frustrates the agreed common purposes and disappoints the reasonable expectations of the other

party thereby depriving that party of the benefits of the agreement.'"  *Century Sur. Co. v. Polisso*,

139 Cal. App. 4th 922, 949 (2006) (quoting *Chateau Chamberay Homeowners Ass'n v. Assoc. Int'l

Ins. Co.*, 90 Cal. App. 4th 335, 346 (2001)).

   In its previous Order, the Court dismissed Plaintiffs' bad faith claim but granted leave to

amend, in the event Plaintiffs could allege facts demonstrating that Defendant's decision to deny

coverage was made or ratified by someone who knew that the $25,000 cap provision was

unenforceable.  *See* Order at 8.  Plaintiffs now assert three grounds for recovery under this cause of

action.  Plaintiffs allege that Defendant withheld benefits due under the insurance policy, and that

such withholding of benefits was unreasonable because Defendant: (1) knew that the $25,000 cap

was unenforceable, *see* TAC ¶ 74; (2) refused to accept a reasonable settlement offer, knowing that

the potential judgment was likely to exceed the amount offered, *see id.* ¶¶ 76-77; and (3) failed to

investigate the claim properly, *id.* ¶ 81.  For the reasons discussed below, Plaintiffs have failed to

cure the pleading deficiencies previously identified, and although they add two new theories,

neither is adequately pled.

   First, Plaintiffs have failed to cure the pleading deficiencies in their claim that Defendant

unreasonably interpreted their policy language.  Plaintiffs allege that Defendant acted in bad faith

by ratifying the $25,000 cap after allegedly being informed that it was unenforceable, thus forcing

Plaintiffs to file this lawsuit.  TAC ¶¶ 81-82.  However, despite alleging that Defendant was

"informed" on December 14, 2009, by Plaintiffs' counsel of the cap's unenforceability, *see* TAC ¶

30 & Ex. 9, Plaintiffs do not allege that Defendant actually knew or believed the cap was

unenforceable.  Under the "genuine dispute doctrine," "an insurer does not act in bad faith when it

mistakenly withholds policy benefits, if the mistake is reasonable or is based on a legitimate

10

United States District Court
For the Northern District of California

dispute as to the insurer's liability." *Century Sur. Co.*, 139 Cal. App. 4th at 949.  In an attempt to

support its allegation that Defendant in fact knew the cap to be unenforceable, Plaintiffs rely on

Defendant's purported failure to respond to a request for admission.  Specifically, Plaintiffs rely on

the following deemed admissions:

> 4.  YOU admit YOUR company was aware of California insurance law regarding
> the requirements for properly [sic] state exclusions and limitations in insurance
> policies when it issued its policies to Plaintiff.
>                         . . . .
> 6.  YOU admit YOUR $25,000 limitation in coverage did not comply with
> California law regarding the disclosure of exclusions and limitations from coverage.

TAC ¶ 59; *see id.* ¶ 78.

Plaintiffs' reliance on these purported "deemed admissions," however, is misplaced.

Plaintiffs served these requests for admissions in state court, prior to removal of this action.

Defendant asserts that it did, in fact, properly respond to the admission requests five days after the

parties' Rule 26(f) conference.  Federal Rule of Civil Procedure 26(d) provides that "[a] party may

not seek discovery from any source before the parties have conferred as required by Rule 26(f)."

Many courts have found that, when a case is removed from state court to federal court, any pre-

removal discovery requests are no longer effective.  *See, e.g.*, *Visicorp v. Software Arts, Inc.*, 575

F. Supp. 1528, 1531 (N.D. Cal. 1983), *abrogated on other grounds by Stewart Org. v. Ricoh Corp.*,

487 U.S. 22 (1988) ("Whether or not such discovery is lodged with the state court, it is not a matter

which remains with any force or effect after removal."); *Riley v. Walgreen Co.*, 233 F.R.D. 496,

499 (S.D. Tex. 2005) ("Nothing in the language of [Rule 26] permits a party to continue to seek

discovery which may have been properly served under state law rules pre-removal.").

Accordingly, because Defendant did timely respond to the requests for admission after the parties'

Rule 26(f) conference, Plaintiffs cannot rely on these putative deemed admissions to establish bad

faith.  Plaintiffs have alleged no other facts showing that Defendant knew the cap to be

unenforceable when denying coverage, and thus Plaintiffs have failed to cure the pleading

deficiencies of this theory previously identified by the Court.

Second, Plaintiffs allege that Defendant acted in bad faith by refusing to accept a

reasonable settlement offer that Defendant knew or should have known was less than the potential

11

judgment amount.  Under California law, "[t]he implied covenant of good faith and fair dealing imposes a duty on the insurer to settle a claim against its insured within policy limits whenever there is a substantial likelihood of a recovery in excess of those limits." *Johansen v. Cal. State Auto. Ass'n Inter-Ins. Bureau*, 15 Cal. 3d 9, 14-15 (1975); *see Crisci v. Sec. Ins. Co.*, 66 Cal. 2d 425, 430 (1967) ("duty to accept reasonable settlements" is implied in the covenant of good faith and fair dealing).  "[R]ecovery may be based on unwarranted rejection of a reasonable settlement offer and . . . the absence of evidence, circumstantial or direct, showing actual dishonesty, fraud or concealment is not fatal to the cause of action."  *Crisci*, 66 Cal. 2d at 430.  Accordingly, "whenever it is likely that the judgment against the insured will exceed policy limits 'so that the most reasonable manner of disposing of the claim is a settlement which can be made within those limits, a consideration in good faith of the insured's interest requires the insurer to settle the claim.'" *Johansen*, 15 Cal. 3d at 16 (quoting *Comunale v. Traders & Gen. Ins. Co.*, 50 Cal. 2d 654, 659 (1958)).  In determining whether to settle a claim, the insurer "must give at least as much consideration to the welfare of its insured as it gives to its own interests.  The governing standard is whether a prudent insurer would have accepted the settlement offer if it alone were to be liable for the entire judgment." *Egan v. Mut. of Omaha Ins. Co.*, 24 Cal. 3d 809, 818 (1979).  "Thus, the only permissible consideration in evaluating the reasonableness of the settlement offer becomes whether, in light of the victim's injuries and the probable liability of the insured, the ultimate judgment is likely to exceed the amount of the settlement offer." *Johansen*, 15 Cal. 3d at 16. "Such factors as the limits imposed by the policy, a desire to reduce the amount of future settlements, or a belief that the policy does not provide coverage, should not affect a decision as to whether the settlement offer in question is a reasonable one." *Id.*

Plaintiffs here allege that, despite rejecting a settlement offer for $110,000 in June 2007, as of November 5, 2007, Defendant itself estimated probable damages in the underlying state court action to be $65,000, excluding attorneys' fees, and thus "early on [Defendant] well knew the exposure could well exceed $100,000.  TAC ¶¶ 19-20 & Ex. 2.  Plaintiffs have not pled facts that would support a finding of bad faith based on the duty to accept reasonable settlements.  According to Plaintiffs' own allegations, Defendant estimated liability to be $65,000, excluding an

12

1   unspecified amount of attorneys' fees, which could mean a total estimated liability exposure of

2   more or less than $110,000.  Thus, even when construed in the light most favorable to Plaintiffs,

3   Plaintiffs' allegations do not show that Defendant's rejection of the settlement offer was

4   unreasonable.  Accordingly, Plaintiffs' second theory for breach of the implied covenant of good

5   faith and fair dealing cannot survive this motion to dismiss.

6       Third and finally, Plaintiffs assert that Defendant acted in bad faith by failing to investigate

7   Plaintiffs' insurance coverage claim properly.  "[A]n insurer may breach the covenant of good faith

8   and fair dealing when it fails to properly investigate its insured's claim." *Egan*, 24 Cal. 3d at 817.

9   "[T]he insurer is charged with constructive notice of facts that it might have learned if it had

10  pursued the requisite investigation." *KPFF, Inc. v. Cal. Union Ins. Co.*, 56 Cal. App. 4th 963, 973

11  (1997).  A typical case regarding this cause of action will involve an insured who has denied an

12  insured's claim without properly investigating the merits of the claim.  *See, e.g.*, *Shade Foods, Inc.*

13  *v. Innovative Products Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 883 (2000); *Cal. Shoppers, Inc.*

14  *v. Royal Globe Ins. Co.*, 175 Cal. App. 3d 1, 37 (1985).

15      Here, Plaintiffs have not alleged that Defendant denied their claim without properly

16  investigating it.  Instead, Plaintiffs assert that Defendant "fail[ed] to investigate the validity of their

17  own illegal $25,000 cap."  TAC ¶ 81.  Even construed in the light most favorable to Plaintiffs,

18  Plaintiffs' allegations at most give rise to a dispute about the enforceability of the cap provision,

19  not a claim that Defendant unreasonably failed to investigate Plaintiffs' claim for coverage under

20  the policy.

21      In sum, Plaintiffs have not adequately pled a cause of action for breach of the implied

22  covenant of good faith and fair dealing under any of its three theories.  Accordingly, Plaintiffs'

23  second cause of action is DISMISSED.  Plaintiffs have already been given an opportunity to cure

24  the deficiencies identified in the Court's previous Order, and they have failed to do so.

25  Accordingly, this cause of action is dismissed without leave to amend.

26      **3.  California Business and Professions Code § 17200**

27      California's Unfair Competition Law ("UCL"), Business and Professions Code §§ 17200 *et*

28  *seq.*, proscribes unfair competition, which includes "any unlawful, unfair or fraudulent business act

13

United States District Court
For the Northern District of California

or practice." "[T]he Legislature . . . intended by this sweeping language to permit tribunals to enjoin on-going wrongful business conduct in whatever context such activity might occur." *Cel-Tech Commc'n, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 181 (1999) (internal citations omitted). "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent. In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa." *Id.* at 180 (internal citations omitted). Plaintiffs assert that it was unfair, unlawful, and fraudulent for Defendant "to suggest and represent $1,000,000 in coverage in a declarations page, and then to bury in small print in an endorsement purporting to extend coverage, a monetary cap of $25,000, particularly when it is common knowledge that most people do not read their entire policy, and do greatly rely on the declarations pages." TAC ¶ 84.

In its previous Order, the Court dismissed Plaintiffs' UCL claim as barred under *Moradi-Shalal v. Fireman's Fund Insurance Companies*, 46 Cal. 3d 287 (1988), and *Textron Financial Corp. v. National Union Fire Insurance Company of Pittsburg*, 118 Cal. App. 4th 1061 (2004). Order at 12. As the Court previously explained, *Moradi-Shalal* held that the Unfair Insurance Practices Act ("UIPA"), Cal. Ins. Code, § 790 *et seq.*, which prohibits "unfair and deceptive acts or practices in the business of insurance," does not create a private cause of action. *See* 46 Cal. 3d at 304. Meanwhile, *Textron* held that "parties cannot plead around *Moradi–Shalal*'s holding by merely relabeling their cause of action as one for unfair competition." 118 Cal. App. 4th at 1070. Under *Textron*, where an insured's unfair competition claim under Section 17200 is based on "the type of activities covered by the UIPA," it is barred by *Moradi-Shalal*. *Id* (claims related to the insurer's use of misleading documents and misrepresentation of both the terms of the insurance policies and its obligations under them were foreclosed by *Moradi-Shalal*); *see also Safeco Ins. Co. v. Superior Court*, 216 Cal. App. 3d 1491, 1494 (Cal. Ct. App. 1990) ("We have no difficulty in deciding the Business and Professions Code provides no toehold for scaling the barrier of *Moradi-Shalal* . . . . To permit plaintiff to maintain this action would render *Moradi-Shalal* meaningless.").

As this Court previously held, Plaintiffs' allegations are covered by California Insurance Code § 790.03(h)(1), which prohibits "knowingly . . . misrepresenting to claimants pertinent facts

14

1   or insurance policy provisions relating to any coverages at issue."  As a result, Plaintiffs' UCL

2   claims are "clearly premised on the kind of conduct covered by the UIPA," and thus unactionable.

3   Order at 12.  The Court granted Plaintiffs leave to amend in the event that Plaintiffs could plead a

4   UCL claim not based on conduct covered by the UIPA, but Plaintiffs have failed to cure this

5   defect.  In their TAC, Plaintiffs argue that their common law fraud claims, as well as their statutory

6   claim under Insurance Code § 785, independently support their UCL claim.  However, what

7   Plaintiffs ignore is that *Textron*'s preclusion bar is not limited to UCL claims expressly pled under

8   the UIPA, but rather applies to UCL claims premised on "the type of activities covered by the

9   UIPA."  *Textron*, 118 Cal. App. 4th at 1070; *see Christensen v. Provident Life & Accid. Ins. Co.*,

10   No. C07-04789, 2008 WL 410238, at *2 (N.D. Cal. Feb. 12, 2008) ("*Textron*'s holding is not

11   limited to claims premised on allegations *expressly* pled under the UIPA.").  Because Plaintiffs' §

12   785 and common law fraud claims arise from the same allegations that Defendant knowingly

13   "misrepresent[ed] to claimants pertinent facts or insurance policy provisions relating to any

14   coverages at issue," Cal. Ins. Code § 7990,03(h)(1), they cannot support a UCL claim.

15   Accordingly, Plaintiffs' third cause of action for violation of California's UCL is DISMISSED.

16   Plaintiffs have already been given an opportunity to cure the deficiencies identified in the Court's

17   previous Order and have failed to do so.  Furthermore, because Plaintiff's UCL claim suffers from

18   a legal rather than factual deficiency, amendment would be futile.  Accordingly, Plaintiffs' UCL

19   cause of action is dismissed without leave to amend.

### 4.  Intentional Infliction of Emotional Distress

21        Plaintiffs' fourth cause of action asserts intentional infliction of emotional distress.  Under

22   certain circumstances, an insurance carrier's conduct in handling a claim may result in liability for

23   intentional infliction of emotional distress.  *Hailey v. Cal. Physicians' Serv.*, 158 Cal. App. 4th

24   452, 473-74 (2007) (internal citations omitted).  To state a claim for intentional infliction of

25   emotional distress, the plaintiff must allege: "(1) extreme and outrageous conduct by the defendant

26   with the intention of causing, or reckless disregard of the probability of causing, emotional distress;

27   (2) the plaintiff's suffering severe or extreme emotional distress; (3) and actual and proximate

28   causation of the emotional distress by the defendant's outrageous conduct."  *Id*.  The conduct

15

1    alleged must "go beyond all possible bounds of decency, and be regarded as atrocious, and utterly

2    intolerable in a civilized community." *Coleman v. Repub. Indem. Ins. Co.*, 132 Cal. App. 4th 403,

3    416 (2005). Behavior may be considered outrageous if a defendant: (1) abuses a relation or

4    position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is

5    susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the

6    recognition that the acts are likely to result in illness through mental distress. *Hailey*, 158 Cal.

7    App. 4th at 474.

8         In the insurance context, courts have rejected liability where the insurer simply delayed or

9    denied insurance benefits, *Coleman*, 132 Cal.App.4th at 417; refused to accept a settlement

10   demand within policy limits, *Isaacson v. Cal. Ins. Guarantee Ass'n*, 44 Cal. 3d 775, 788-89 (1988);

11   or failed to investigate a claim and accused the insured of "'trying to put something over on'" the

12   insurer, *Ricard v. Pac. Indem. Co.*, 132 Cal. App. 3d 886, 889, 895 (1982). On the other hand,

13   insurers have been held liable for intentional infliction of emotional distress after attempting to

14   induce an insured to surrender his policy by sending false and threatening letters, *Fletcher v. W.*

15   *Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376 (1970); frivolously delaying disability payments despite

16   knowledge of the insured's "fragile emotional condition," *Hernandez v. Gen. Adjustment Bureau*,

17   199 Cal. App. 3d 999 (1988); or by rescinding coverage without good cause after learning that an

18   insured has suffered an accident. *Hailey*, 158 Cal. App. 4th at 474.

19        Plaintiffs allege two separate grounds for recovery, both of which were previously

20   dismissed without prejudice. First, Plaintiffs assert that Defendant "acted intentionally and/or

21   recklessly" in creating its policy, that Defendant "knew a large number of insureds would be

22   deceived," by the "burying" of the cap, and that Defendant "knew or should have know [sic] such a

23   sales tactic would bound [sic] to shatter the promised 'peace of mind' that normally flows from

24   acquiring insurance." TAC ¶ 89. Second, Plaintiffs assert that Defendant "intentionally and/or

25   recklessly harmed and *targeted* Wayne and Peggy" by forcing them "to endure the stress of being

26   sued, litigation, and undergo a jury trial . . . which exposed their life savings to being taken away,"

27   and further that Defendant "knew Wayne had gone into the hospital for stress from the trial." TAC

28   ¶ 91.

16

*United States District Court*
For the Northern District of California

Both theories were previously determined to be insufficiently pled, and Plaintiffs have failed to cure the deficiencies in their TAC.  As observed in the Court's previous Order, where an insurer has been held liable for the infliction of emotional distress, courts have invariably found it relevant that the responsible parties had knowledge of a specific plaintiff's vulnerabilities.  *See Fletcher*, 10 Cal. App. 3d 376 (conduct occurred after claims adjuster learned that plaintiff had become disabled); *Hernandez*, 199 Cal. App. 3d at 1007 (claims adjusters knew of plaintiff's susceptibility to mental distress and repeated attempts at suicide); *Hailey*, 158 Cal. App. 4th at 474 ("Blue Shield knew about Steve's car accident, severe physical injuries, disability, and liability for mounting medical bills.  Given these circumstances, Blue Shield knew it would cause plaintiffs to suffer emotional distress if it rescinded Steve's health care coverage.").  Here, as before, Plaintiffs have not alleged that Defendant possessed any special knowledge about any specific vulnerabilities of Plaintiffs when designing Plaintiffs' policy.  Rather, Plaintiffs continue to allege only that Defendant should have known that the limitation would cause distress not only to Plaintiffs but also to "a large number of insureds."  TAC ¶ 89.  These allegations are insufficient to support a claim for intentional infliction of emotional distress.

Plaintiff's second theory as pled is deficient as well.  An insurer who undertakes the defense of an insured may decide whether or not to settle a claim, so long as the decision is not unreasonable.  *See Risely v. Interinsurance Exch. of Auto. Club*, 183 Cal. App. 4th 196, 208 (2010).  Here, as before, Plaintiffs have not alleged that Defendant's decision to reject the settlement offer was undertaken in bad faith or without Plaintiffs' best interests in mind.  Instead, Plaintiff alleges that Defendant "[knew] that the $25,000 cap was illegal" and "knew Wayne had gone into the hospital for stress from the trial."  TAC ¶ 91.  Defendant's purported admission of the alleged illegality of the cap has already been addressed above and rejected as a basis for Plaintiffs' claims.  As for Defendant's knowledge of Mr. Merritt's hospitalization, there is nothing to support the inference, from this knowledge alone, that Defendant's decision to nevertheless continue with litigation was unreasonable or intended to cause Plaintiffs' emotional distress.

Accordingly, Plaintiffs' allegations fall short of stating a plausible claim for intentional infliction of emotional distress.  Plaintiffs' fourth cause of action is therefore likewise

17

1    DISMISSED.   The Court finds that amendment would be futile because Plaintiffs have failed to

2    cure the deficiencies identified in the Court's previous Order on this cause of action.   Accordingly,

3    this cause of action is dismissed without leave to amend.

### 5.   Fraud

5    Plaintiffs' fifth cause of action for fraud in fact comprises four separate counts for: (1)

6    intentional misrepresentation; (2) concealment; (3) promise without intention of performing; and

7    (4) negligent misrepresentation.   With the exception, of negligent misrepresentation, all of these

8    counts are species of fraud.  *See* Cal. Civ. Code § 3294(c)(3) (defining "fraud" as "an intentional

9    misrepresentation, deceit, or concealment of a material fact known to the defendant with the

10   intention on the part of the defendant of thereby depriving a person of property or legal rights or

11   otherwise causing injury"); *see also Starnet Int'l AMC Inc. v. Kafash*, 09-CV-04301-LHK, 2011

12   WL 31269, at *5 (N.D. Cal. Jan. 5, 2011) ("Intentional misrepresentation is a claim for fraud.");

13   *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (noting that the

14   misrepresentation element of a fraud claim may be proved by showing concealment); *Lazar v.*

15   *Superior Court*, 12 Cal. 4th 631, 638 (1996) ("'Promissory fraud' is a subspecies of the action for

16   fraud and deceit.").   Under California law, the indispensable elements of fraud are: "(1) a

17   misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity

18   (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting

19   damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citing *Lazar*, 12

20   Cal. 4th at 638).

21   Negligent misrepresentation requires a similar showing, with the exception that the

22   defendant need not actually know the representation is false.   Instead, to plead negligent

23   misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds for

24   believing the representation to be true.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v.*

25   *Cambridge Integrated Servs. Grp., Inc.*, 171 Cal. App. 4th 35, 50 (2009) (identifying the elements

26   of negligent misrepresentation as: "'(1) the misrepresentation of a past or existing material fact[;]

27   (2) without reasonable ground for believing it to be true[;] (3) with intent to induce another's

28   reliance on the fact misrepresented[;] (4) justifiable reliance on the misrepresentation[;] and (5)

*United States District Court*
For the Northern District of California

resulting damage'") (quoting *Apollo Cap. Fund LLC v. Roth Cap. Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)).  Although negligent misrepresentation is not squarely a claim sounding in fraud, California courts are in "consensus that the causal elements, particularly the allegations of reliance, must be specifically pleaded." *Id.* (quoting, e.g., *Small v. Fritz Companies, Inc.*, 30 Cal. 4th 167, 184 (2003); *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004)).

Claims sounding in fraud or mistake are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Courts in the Ninth Circuit have held that claims for both fraud and negligent misrepresentation are subject to Rule 9(b). *See Meridian Project Sys., Inc. v. Hardin Const. Co., LLC*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003); *Glenn Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1093 (C.D. Cal. 1999).  To satisfy the heightened standard under Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *accord Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).  Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc. (In re Glenfed, Inc. Sec. Litig.)*, 42 F.3d 1541, 1548 (9th Cir. 1994).

The Court previously dismissed Plaintiffs' fraud claims without prejudice upon determining that Plaintiffs failed to plead reliance and damages with particularity.  Order at 18.  The Court previously held that Plaintiffs had not alleged any action taken in reliance on Defendant's alleged misrepresentations, nor had they shown that they suffered any damages specifically due to Defendant's alleged fraud rather than its alleged breach of contract. *Id.*

**United States District Court**
For the Northern District of California

19

**United States District Court**
For the Northern District of California

1    Plaintiffs' allegations here are no different.  Apart from bare, conclusory assertions that

2    they "reasonably relied" on the representation that the policy afforded $1,000,000 in coverage,

3    Plaintiffs' only specific allegation of reliance is that they "reasonably relied" on Defendant's

4    misrepresentations in "[purchasing] and [keeping] the insurance."  TAC ¶ 116.  However, as the

5    Court previously explained, "Plaintiffs must explain why discovering the cap provision at the time

6    of the state court action caused harm beyond simply depriving them of a benefit owed under the

7    contract."  Order at 18.  That is, because reliance and damages are essential elements of all fraud

8    claims, Plaintiffs must allege facts showing that they suffered damages specifically as a result of

9    Defendant's alleged fraud, rather than merely as a result of Defendant's alleged breach of contract.

10    Plaintiffs have not done so in their Third Amended Complaint.  As before, the only damages

11    alleged are those that resulted from Defendant's purported failure to fulfill its contractual

12    obligations to Plaintiffs.  Plaintiffs have failed to cure the deficiencies identified in the Court's

13    previous Order on this cause of action, and thus, the Court finds that further amendment would be

14    futile.  Accordingly, Plaintiffs' fifth cause of action for fraud is DISMISSED without leave to

15    amend.

16                                  **6.  Reformation**

17    Plaintiffs' sixth cause of action is for reformation.  To state a claim for reformation under

18    California law, a plaintiff must plead that "by reason of fraud practiced by one of the parties, or of

19    the mutual mistake of the parties or of a mistake of one of them, which the other at the time knew

20    or suspected, there were omitted from the instrument certain material terms and conditions.  In

21    other words, that the language of the writing failed, for some reason, to express the intention of the

22    parties."  *Philips Med. Capital, LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035,

23    1046-47 (N.D. Cal. 2007) (quoting *Pascoe v. Morrison,* 219 Cal. 54, 56 (1933)).  Plaintiffs allege

24    that they were "fraudulently and mistakenly led to believe by [Defendant's] Declarations page and

25    premiums paid that there was $1,000,000 in liability coverage for 'product-related damage,'" and

26    that Defendant knew or had reason to know of this fraud or mistake.  TAC ¶¶ 127-28.

27    In previously dismissing this claim without prejudice, the Court noted that Plaintiffs had

28    failed to state a claim for fraud, had not alleged mutual mistake, and had not pled facts sufficient to

20

justify reformation on the basis of unilateral mistake.  Order at 19.  Plaintiffs have failed to cure

these pleading deficiencies.  As explained above, Plaintiffs have again failed to state a claim for

fraud, have again made no allegations of mutual mistake, and have again insufficiently pled

unilateral mistake.  To be granted reformation based on unilateral mistake, a plaintiff must show

that he "made a mistake at the time of the time of contracting, and that the mistake was known to

or suspected by defendants."  *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1055

(C.D. Cal. 2008).  The Court previously found that "[c]onstructive notice of the unilateral mistake

of the other party is not a sufficient ground for reformation."  Order at 19.  Here, Plaintiffs have

failed to allege any actual knowledge or suspicion on the part of Defendant.  Instead, they claim,

only in conclusory statements, that Defendant "knew or suspected of the above-described fraud

and/or mistake," and suggest that this may be inferred by the way in which Defendant

"highlighted" the $1,000,000 in coverage and "buried" the cap.  TAC ¶ 128.  At best, this

allegation demonstrates constructive notice, not actual knowledge or suspicion.  The Court finds

that further amendment would be futile because Plaintiffs failed to cure the deficiencies identified

in the Court's previous Order on this cause of action.  Accordingly, Plaintiffs' reformation cause of

action is DISMISSED without leave to amend.

### 7.   Violation of California Insurance Code § 785

California Insurance Code § 785 states that "[a]ll insurers, brokers, agents, and others

engaged in the transaction of insurance owe a prospective insured who is 65 years of age or older, a

duty of honesty, good faith, and fair dealing."  Plaintiffs properly allege that Mr. Merritt was over

65 years old at the time of insurance purchase.  However, as noted above, Plaintiffs have failed to

state a plausible cause of action for Defendant's breach of its duty of good faith and fair dealing.

Because the Court dismissed Plaintiffs' second cause of action with prejudice, the Court also

DISMISSES Plaintiff's seventh cause of action with prejudice.

### C.   Peggy Merritt

Defendant moves to dismiss all causes of action in relation to Plaintiff Peggy Merritt on the

ground that Mrs. Merritt is not a named insured under the GL policy, and the endorsement limits

coverage for product-related liability to only named insureds.  Mot. at 14.  Defendant argues that,

United States District Court
For the Northern District of California

1   because Mrs. Merritt is not a named insured under the contract, she cannot sue for damages

2   resulting from the insurer's withholding of policy benefits.  *See Austero v. Nat'l Cas. Co.*, 62 Cal.

3   App. 3d 511, 515-16 (1976) (spouse of insured who was not herself a party to the contract or an

4   express beneficiary could not state a cause of action against insurer for breach of a duty, express or

5   implied, arising from the contractual relationship).

6          Plaintiffs do not dispute that Mrs. Merritt is not a named insured, nor do they dispute the

7   legal proposition that one who is neither a named insured nor an express beneficiary cannot assert a

8   breach of contract claim against the insurer.  Instead, Plaintiffs make three arguments, unsupported

9   by law or fact, all of which are unavailing.  First, Plaintiffs assert that Defendant admitted Mrs.

10  Merritt is a named insured, but they do so without explanation as to where or how Defendant

11  admitted as such.  To the extent Plaintiffs rely on the aforementioned requests for admission, the

12  Court has already addressed and rejected this argument as the basis for Plaintiffs' claims.  Second,

13  Plaintiffs argue that, to the extent the limitation excluding Mrs. Merritt from coverage is "buried in

14  an Endorsement" just a few lines from the disputed cap provision at issue, the same

15  unenforceability arguments made with respect to the cap provision apply equally to the limitation

16  of spousal coverage.  Opp'n at 24.  While this argument perhaps has some logical appeal, Plaintiffs

17  have not alleged that Mrs. Merritt is a named insured under the insurance contract or an express

18  beneficiary thereof.  Thus, it is not clear from the face of the TAC or the documents attached

19  thereto how the endorsement in reality limits Mrs. Merritt's coverage at all.  Third, Plaintiffs argue

20  that "it is unconscionable to cut out spousal coverage in an Endorsement purporting to extend

21  coverage," *id.* (emphases omitted), but they provide absolutely no argument, let alone legal

22  authority, for why such a policy would be unconscionable.

23         Accordingly, because Plaintiffs have not alleged that Mrs. Merritt is a named insured under

24  the insurance contract or an express beneficiary thereof, and the Declarations pages on which

25  Plaintiffs rely clearly identify only "RV's of Merritt; Wayne Merritt Motor Co., Inc.; [and] Wayne

26  Merritt" as named insured, Mrs. Merritt cannot sue Defendant for claims arising from the alleged

27  breach.  *See Austero*, 62 Cal. App. 3d at 515-16.  Mrs. Merritt's claims are therefore DISMISSED.

28  However, because Defendant did not previously move to dismiss Mrs. Merritt's claims, Plaintiffs

**United States District Court**
For the Northern District of California

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

were not on notice of any defect that needed curing.  Accordingly, Plaintiffs are granted leave to amend solely with respect to Mrs. Merritt's breach of contract claim.

### D.  Punitive Damages

Defendant moves to dismiss Plaintiffs' claims for punitive damages.  Under California law, punitive damages may be appropriate "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code § 3294.  Punitive damages may be appropriate where an insurer commits fraud or breaches the covenant of good faith and fair dealing.  *See, e.g.*, *Egan*, 24 Cal. 3d at 817 (allowing a punitive damages award against an insurer that acted in bad faith by failing to properly investigate its insured's claim).  However, punitive damages may not be awarded for breach of contract.  *City of Hope Nat'l Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 392 (2008).

Because the Court dismisses with prejudice all of Plaintiffs' claims except breach of contract, punitive damages are unavailable here.  Accordingly, Plaintiffs' claim for punitive damages is DISMISSED with prejudice.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's motion is DENIED with respect to the breach of contract claim, but GRANTED with prejudice with respect to Plaintiffs' causes of action for breach of the implied covenant of good faith and fair dealing, unfair business practices, intentional infliction of emotional distress, fraud, reformation, violation of California Insurance Code § 895, and punitive damages.  Defendant's motion to dismiss Mrs. Merritt's claims is GRANTED with leave to amend.  Should Plaintiffs wish to file a Fourth Amended Complaint, they must do so within 21 days of the date of this Order.  Plaintiffs may not add new claims or parties without seeking Defendant's consent or leave of the Court pursuant to Federal Rule of Civil Procedure 15.  **IT IS SO ORDERED.**

Dated: July 26, 2012

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No.: 11-CV-01762-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS